IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE:<br><br>AMERICAN TRAILER & STORAGE, INC.<br><br>Debtor.<br><br>―――――――――――――――――――<br><br>AMERICAN TRAILER & STORAGE, INC.<br><br>Plaintiff,<br>vs.<br><br>BANK OF THE WEST<br><u>Serve:</u><br>CT Corporation System<br>301 South 13th Street, Suite 500<br>Lincoln, NE 68508<br><br>GENERAL FINANCE GROUP, INC.<br><u>Serve:</u><br>Christopher A. Wilson<br>39 East Union Street<br>Pasadena, CA 91103<br><br>Defendants. | Case No. 08-43929-DRD<br><br>Chapter 11<br><br>Adversary No. |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Debtor American Trailer & Storage, Inc. ("Debtor" or "Plaintiff"), for its Verified Complaint for Injunctive Relief, states as follows:

## FACTS

1.  Debtor commenced the captioned case by filing its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Code") on September 23, 2008 (the "Filing Date").

WA 1204786.2

2.     Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Code §§ 1107 and 1108.

3.     Debtor is in the business of buying and selling, renting and leasing storage containers and semi-trailers.

4.     Defendant Bank of the West ("BOW") is Debtor's primary secured lender and may be served at the address above. BOW is represented by Benjamin Mann and Michael Fielding with the law firm of Husch Blackwell Sanders, LLP. Debtor and BOW's relationship in the captioned case is currently governed by the Agreed Final Order on Debtor's Emergency Motion for Authority to Use Cash Collateral Claimed by Bank of the West (the "Cash Collateral Order").

5.     Defendant General Finance Group, Inc. ("GFC") is a Delaware corporation in the business of acquiring businesses in direct competition with Debtor's business. Upon information and belief, in October 1, 2008, GFC acquired Pac-Van, Inc., an Indiana corporation, which is a leading provider of modular buildings, mobile offices and storage containers in the United States.

6.     On July 21, 2009, BOW received an offer from GFC to purchase substantially all of Debtor's assets through a plan of reorganization to be proposed by BOW (the "GFC Letter of Intent").

7.     A hearing to confirm Debtor's First Amended Plan of Reorganization (the "Plan") is scheduled for August 21, 2009 (the "Confirmation Hearing").

8.     Upon information and belief, BOW intends to propose a competing plan of reorganization premised solely or substantially on the GFC Letter of Intent (the "BOW Plan"). The Letter of Intent is premised on confidential information received by GFC through

confidential discussions with Debtor in January 2009, as more fully discussed below (collectively, the "Confidential Information"), all of which are subject to a Nondisclosure Agreement entered into by the parties on January 14, 2009 and which remains in effect.

9. In this action, Debtor seeks to enjoin BOW from filing the BOW Plan to the extent it is premised on the Confidential Information in violation of the Nondisclosure Agreement. Debtor further seeks to enjoin BOW from indirectly aiding and assisting GFC in violating the Nondisclosure Agreement by filing and soliciting acceptances of the BOW Plan. Debtor finally seeks to enjoin GFC from submitting an offer to purchase substantially all of Debtor's assets in violation of the Nondisclosure Agreement.

10. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

11. Venue for this adversary proceeding is proper in this Court because this Court has jurisdiction over the Debtor's underlying Chapter 11 bankruptcy case.

12. In Fall 2008, after the Filing Date, Richard G. Honan and Richard G. Honan II, principals of Debtor, met with John Johnson, executive vice president of GFC, at an industry conference in Las Vegas, Nevada to discuss a possible transaction wherein GFC would purchase or take an equity interest in Debtor. As a follow-up to this discussion, on January 14, 2009, the Honans and Mr. Johnson met at length in Kansas City, Missouri (the "January Meeting"). Given the sensitivity of the business information to be discussed at the January Meeting, Mr. Honan and Mr. Johnson signed a Nondisclosure Agreement, a copy of which is attached as **Exhibit A**. Subject to the Nondisclosure Agreement, Debtor provided Mr. Johnson with detailed, confidential information regarding Debtor's business that had not, and to date has not, been made available to the public. Such information included specific customer names, customers' industry

composition, advertising and marketing techniques, staffing levels, average sales prices of equipment over appraised FMV, etc. (now, the "Confidential Information"). While Debtor provided many of the details verbally during the January Meeting, Mr. Honan did provide him with written documentation which Mr. Johnson required for GFC to make a proposal to purchase Debtor.

13. A few weeks after the January Meeting, Mr. Honan followed up with Mr. Johnson regarding a proposal. Mr. Johnson informed Debtor that he had reviewed the Confidential Information that Debtor had provided to him, and that GFC was unable to purchase Debtor given Debtor's financial and fleet utilization results and GFC's financial covenants with its secured lender(s). Debtor has had no further contact with GFC.

14. On or about July 21, 2009, BOW received the GFC Letter of Intent, a copy of which is attached as **Exhibit B**. Upon information and belief, BOW asserts that it did not solicit the GFC Letter of Intent. The GFC Letter of Intent offers to, among other things, pay BOW in full, including attorneys' fees. While the GFC Letter of Intent pays unsecured trade creditors in full, it pays nothing to insiders of Debtor, who have general unsecured claims in the approximate amount of $476,000 and equity claims in the form of paid in capital in the amount of $1,083,000.

15. Debtor submits that the only basis on which GFC could submit the GFC Letter of Intent to BOW is based upon the Confidential Information, which is in direct violation of paragraph 5 of the Nondisclosure Agreement– "Neither party may use the Disclosing Party's Confidential Information for competing with the other party or for any purpose not in furtherance of the business relationship between them." Pursuant to paragraph 11, the Nondisclosure Agreement expires two years after the last receipt of Confidential Information by either party.

4

WA 1204786.2

16. Upon information and belief from BOW's counsel, the BOW Plan is premised solely or substantially on the GFC Letter of Intent. If BOW does file the BOW Plan and attendant disclosure statement, Debtor reserves its right to object to the substance of any such plan pursuant to Code §§ 1125 and 1129 at the appropriate time.

17. For purposes of the captioned Complaint, Debtor seeks to enjoin BOW from filing the BOW Plan to the extent it is premised on the Confidential Information in violation of the Nondisclosure Agreement. Debtor further seeks to enjoin BOW from indirectly aiding and assisting GFC in violating the Nondisclosure Agreement by filing and soliciting acceptances of the BOW Plan. Debtor finally seeks to enjoin GFC from submitting an offer to purchase substantially all of Debtor's assets in violation of the Nondisclosure Agreement..

## LEGAL ARGUMENT

18. The standard for granting preliminary injunctive relief requires consideration of the: (1) probability of success on the merits; (2) threat of irreparable harm to movant; (3) balance between harm and injury that granting injunctive relief would inflict on other interested parties; and (4) whether issuance of an injunction is in the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)); *Entergy, Arkansas, Inc. v. State of Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000); *AHI Metnall L.P. by AHI Kansas, Inc. v. J.C. Nichols Co.*, 891 F. Supp. 1352, 1355 (W.D. Mo. 1995).

19. Applying these criteria, Missouri courts have found that it is appropriate for the courts to enforce non-competition and non-disclosure covenants which reasonably protect legitimate business interests. *Silvers, Asher, Sher & McLaren, M.D.s Neurology, P.C. v. Batchu*, 16 S.W.3d 340, 343-45 (Mo.App. W.D. 2000); *Ashland Oil, Inc. v. Tucker*, 768 S.W.2d 595, 601 (Mo. App. 1989).

WA 1204786.2

20. In this case, the provisions of the Nondisclosure Agreement protect Debtor's proper business interests, and BOW's impending action of filing the BOW Plan based upon Confidential Information improperly used by GFC in formulating the GFC Letter of Intent must be enjoined.

## COUNT I– TEMPORARY, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

21. Debtor restates and incorporates paragraphs 1 through 20 as though fully set forth herein.

22. As demonstrated above, Debtor is likely to succeed on the merits in that BOW, by using the Confidential Information as part of the BOW Plan, is a conduit for GFC to attempt an end-run around the Nondisclosure Agreement.

23. Debtor will suffer immediate and irreparable harm unless Defendants are properly enjoined. GFC has already breached the Nondisclosure Agreement by submitting the GFC Letter of Intent to BOW directly and, upon information and belief, calling Debtor's creditors regarding the GFC Letter of Intent. This is evidence of irreparable harm. *See Sigma Chem. Co. v. Harris*, 586 F. Supp. 704, 710 (E.D.Mo. 1984) (risk alone of trade secret disclosure demonstrates existence of irreparable harm).

24. Paragraph 8 of the Nondisclosure Agreement reads as follows:

> In the event the Receiving Party [here, GFC]. . . disseminates or release any Confidential Information except as provided above, such disclosure, dissemination or release will be deemed a material breach of this Agreement and the Disclosing Party may demand prompt return of all Confidential Information previously provided to Receiving Party. *Each party agrees that in the event of a breach or threatened breach by either party, including its officers, directors, consultants or employees, of the provisions of this Agreement, the non-breaching party will have no adequate remedy in money damages and, accordingly, shall be entitled to seek an injunction against such breach, in addition to any other legal or equitable remedies available to it.* (emphasis added).

25. The parties expressly agree that given GFC's breach of the Nondisclosure Agreement, Debtor has no adequately remedy in money damages and is entitled to the injunctive relief it seeks in the captioned Complaint.

26. The balance of the equities favors the grant of injunctive relief in that Debtor seeks to restrain GFC, using BOW as a conduit, from using the Confidential Information in a manner that is detrimental and disruptive to Debtor and its reorganization efforts.

27. The public interest strongly favors the grant of the injunctive relief. This Debtor wants to continue operating its business. It has demonstrated its ability to reorganize when, month after month, it has made adequate protection payments of $68,000 per month to BOW plus has paid all of its other obligations in the ordinary course of business. Without such relief, instead of focusing on confirmation of the Plan and running its business in such a way that BOW and all other creditors are paid in full pursuant to the terms of the Plan, GFC, using BOW as a conduit, will be rewarded for its flagrant violation of the Nondisclosure Agreement. By-passing Debtor just a few months after telling Debtor it was unable to consummate a transaction is strong evidence that GFC seeks to do what it could not do if it acted in accordance with the Nondisclosure Agreement– seek a consensual furtherance of a business relationship mutually beneficial to Debtor, its creditors and GFC.

WHEREFORE, for the foregoing reasons, Plaintiff American Trailer & Storage, Inc. requests that this Court issue a preliminary injunction:

(A) enjoining BOW from filing the BOW Plan, which is premised solely or substantially on the GFC Letter of Intent; and

(B) enjoining BOW from indirectly aiding and assisting GFC in violating the Nondisclosure Agreement by filing and soliciting acceptances of the BOW Plan; and

(C) enjoining GFC from submitting an offer to purchase substantially all of Debtor's assets in violation of the Nondisclosure Agreement.

AMERICAN TRAILER & STORAGE, INC.

By: /s/ Richard G. Honan, II
    Richard G. Honan, II
    President


SPENCER FANE BRITT & BROWNE LLP

/s/ Lisa A. Epps
Scott J. Goldstein   MO #28698
Lisa A. Epps   MO #48544
sgoldstein@spencerfane.com
lepps@spencerfane.com
1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216– Fax

PROPOSED ATTORNEYS FOR DEBTOR AND
DEBTOR-IN-POSSESSION

# NONDISCLOSURE AGREEMENT

This Nondisclosure Agreement (the "Agreement") is entered into between American Trailer & Storage, Inc., a Missouri corporation, and General Finance Corporation, a Delaware Corporation, as of January 14, 2009. American Trailer & Storage, Inc. is referred to herein as "AT&S". General Finance Corporation is referred to herein as "Prospect".

Each party agrees that all information relating to the other that is known to be confidential or proprietary, or which is clearly marked as such, and is furnished to it or to its officers, employees, or agents (collectively the "Receiving Party") by the other party (the "Disclosing Party"), whether written or delivered, visually or orally, will be deemed to be confidential information ("Confidential Information"). Each party hereby agrees that it will use any Confidential Information received by it solely for purposes of evaluating whether the parties should enter into a business arrangement and that such information will be kept confidential by the Receiving Party as provided in this Agreement. The parties agree to protect each other's Confidential Information disclosed within ninety (90) days before the date of this Agreement or at any time after the execution of this Agreement on the following terms:

1. Each party shall use at least the same degree of care, but no less than a reasonable degree of care, to avoid unauthorized disclosure or use of the Disclosing Party's Confidential Information as it employs with respect to its own Confidential Information of like importance. Receipt and disclosure of Confidential Information will be coordinated for the parties by:

   For Prospect:     John O. Johnson
                     Executive Vice President
                     39 East Union Street
                     Pasadena, CA 91103
                     Ph: 626-584-9722

   For AT&S:         Rick Honan
                     American Trailer & Storage, Inc.
                     3505 Manchester Trfwy.
                     Kansas City, MO 64129
                     Phone: 816-765-7771
                     Fax: 816-765-5088
                     Email: rick.honan@atandsonline.com

2. Neither party has any obligation with respect to any Confidential Information which (a) was previously known by such party without obligations of confidentiality; (b) that party independently develops; (c) is or becomes publicly available without a breach of this Agreement by either party; or (d) is disclosed to it by a third person who is not required to maintain its confidentiality. The party claiming any of the above exceptions has the burden of proving its applicability.

3. Each party may disclose Confidential Information only to its own officers, directors and employees and to its consultants and advisors who reasonably need to know it for the sole purpose of evaluating the potential business arrangement, and provided that the representative or agent agrees to be bound to this Agreement. Each party shall be responsible to the other for any violation of this Agreement by its own officers, directors, employees, consultants or advisors.

4. Neither party may print or copy, in whole or in part, any documents or other media containing any Confidential Information without the prior written consent of the Disclosing Party other than copies for its officers, directors, employees, consultants or advisors who are working on the matter for the sole purpose of evaluating the potential business arrangement. Neither party will remove or deface any notice of copyright, trademark, logo or other proprietary notice of the Disclosing Party appearing on any original or copy of the Disclosing Party's Confidential Information.

5. Neither party may use the Disclosing Party's Confidential Information for competing with the other party or for any purpose not in furtherance of the business relationship between them. Neither party will, directly or indirectly, solicit or offer employment to or hire any employee, former employee, subcontractor, or former subcontractor of the other. The terms "former employee" and "former subcontractor" will include only those employees or subcontractors of either party who were employed or utilized by that party within six (6) months immediately prior to the alleged violation. [handwritten: Excludes responses to general solicitations.]

6. Each party's Confidential Information shall remain its own property. Upon the request of the other party, each party shall return all of the other's Confidential Information, or destroy it and provide the other party with written certification of such destruction, except for archival and backup copies that are not readily available for use and business records required by law to be retained.

7. If a Receiving Party becomes legally obligated to disclose any of the Disclosing Party's Confidential Information, the Receiving Party shall notify the Disclosing Party in writing promptly and shall cooperate with the Disclosing Party ~~at the Disclosing Party's expense in seeking a protective order or other appropriate remedy.~~

8. In the event that the Receiving Party or any of the Receiving Party's representatives disseminates or releases any Confidential Information except as provided above, such disclosure, dissemination or release will be deemed a material breach of this Agreement and the Disclosing Party may demand prompt return of all Confidential Information previously provided to Receiving Party. Each party agrees that in the event of a breach or threatened breach by either party, including its officers, directors, consultants or employees, of the provisions of this Agreement, the non-breaching party will have no adequate remedy in money damages and, accordingly, shall be entitled to seek an injunction against such breach, in addition to any other legal or equitable remedies available to it. Each party waives any requirement the other prove the economic value of any Confidential Information or post a bond or other security in connection with the enforcement of its rights hereunder, ~~provided, however, if the posting of a bond is required in connection therewith, then a bond in an amount not to exceed Five Thousand Dollars ($5,000.00) is reasonable.~~

9. Each party is disclosing Confidential Information solely on an "AS IS" basis, with no warranties. The Disclosing Party will not be liable for any damages arising out of the use of Confidential Information disclosed hereunder.

10. If any Confidential Information originating in the United States is authorized by this Agreement to be disclosed outside the United States, the Receiving Party agrees to ensure that it or any materials derived from it are not disclosed or communicated to any individual or entity in any country to which the export of such information is prohibited by U.S. export laws or regulations.

11. This Agreement is governed by the laws of Missouri without regard to its rules on conflicts of law. Neither party may assign its rights or obligations under this Agreement. No modification or waiver of any provision of this Agreement shall be effective unless in writing and signed by the party sought to be bound. This Agreement is the entire agreement between the parties on nondisclosure of confidential information and supersedes all prior representations and agreements between the parties on that subject. Both parties acknowledge that they have not been induced to enter into this Agreement by any representations or promises not specifically stated herein. This Agreement shall expire two years after the last receipt of Confidential Information by either party. If any term of this Agreement is found to be unenforceable or contrary to law, it will be modified to the least extent necessary to make it enforceable, and the remaining portions of this Agreement will remain in full force and effect. The waiver by any party of any breach of covenant will not be construed to be a waiver of any succeeding breach or any other covenant. All waivers must be in writing, and signed by the party waiving its rights.

12. All notices, requests, demands, waivers and communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered (i) by hand (including by reputable overnight courier), (ii) by mail (certified or registered mail, return receipt requested) or (iii) by telecopy facsimile transmission (receipt of which is confirmed):

    (i) If to Prospect:    John O. Johnson
                                  Executive Vice President
                                  39 East Union Street
                                  Pasadena, CA 91103
                                  Ph: 626-584-9722

with a copy, given in the manner prescribed above, to:

    (ii) If to AT&S:    Rick Honan
                                American Trailer & Storage, Inc.
                                3505 Manchester Trfwy.
                                Kansas City, MO 64129
                                Phone: 816-765-7771
                                Fax: 816-765-5088
                                Email: rick.honan@atandsonline.com

Any party may alter the address to which communications or copies are to be sent by giving notice of such change of address to the other parties in conformity with the provisions of this Section for the giving of notice. All such notices, requests, demands, waivers and communications shall be deemed to have been given (i) on the date on which so hand-delivered, (ii) on the third business day following the date on which so mailed and (iii) on the date on which telecopied and confirmed, except for a notice of change of address, which shall be effective only upon receipt thereof.

13. The parties agree that if any party seeks to resolve a dispute hereunder pursuant to a legal proceeding, the prevailing party in such proceeding shall be entitled to recover from the other party reasonable fees and expenses (including reasonable counsel fees and expenses) incurred in connection with such proceeding.

14. The construction of this Agreement shall not take into consideration the party who drafted or whose representative drafted any portion of this Agreement, and no canon of construction shall be applied that resolves ambiguities against the drafter of a document. The parties acknowledge that they were advised by competent counsel that each has chosen to represent such party and each party has had a full opportunity to comment upon and negotiate the terms of this Agreement. The language used in this Agreement shall be deemed to be the language chosen by the parties hereto to express their mutual intent as a result of arm's length bargaining.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on January 14, 2009.

**AGREED:**

**AT&S:**

American Trailer & Storage, Inc.

By: _____
Richard G. Honan, II,
President

**PROSPECT:**

General Financial Corporation

By: _____
John O. Johnson,
Executive Vice President

39 EAST UNION STREET
PASADENA, CA 91103

626.204.6342 TEL
626.795.8090 FAX

GENERAL FINANCE GROUP, INC.

<u>Delivered by E-mail</u>

July 21, 2009

Jeff Mumm
Vice President, Special Assets Department
Bank of the West
13220 California Street
Omaha, NE 68154

Dear Mr. Mumm:

This letter will confirm our proposal for a transaction in which General Finance Group, Inc., itself or one of its affiliated companies (collectively "GFG"), will purchase substantially all of the assets of American Trailer & Storage, Inc. ("ATS") through a reorganization plan to be proposed by Bank of the West and confirmed by the creditors of ATS through the United States Bankruptcy Court Western District of Missouri ("GFG Plan").

1.  **Purchase of Assets**: Upon confirmation of the GFG Plan, GFG will purchase substantially all of the assets of ATS (collectively, the "<u>Assets</u>"), including, without limitation:

    (i)     the "<u>Lease Fleet</u>" of ATS (consisting of all the trailers, office units and containers, including "sale" units owned by ATS and 3rd party lease agreements for sublet equipment),

    (ii)    the transportation equipment and other equipment and parts and supplies used in the business of ATS (consisting of all delivery, support and maintenance vehicles and equipment owned or leased by ATS),

    (iii)   the accounts receivable of ATS,

    (iv)    the current and historic customer list related to the foregoing lease fleet, including the current Open Contract Report,

    (v)     the cash collateral,

    (vi)    open rental contracts, all claims and rights under contracts and leases identified by GFG, purchase and sale orders and other agreements made in the ordinary course of business identified by GFG,

    (vii)   all sales and advertising materials,

    (viii)  the current telephone and facsimile numbers used in the business,

    (ix)    the trade name used in the business or any variations thereof,

    (x)     all licenses and registrations relating to the Assets, all records and books of account, Asset list by unit and serial number, intangible and intellectual property (including domain names, trademarks and trade secrets in connection therewith) and all other tangible and intangible property necessary to operate the business (the "<u>Business</u>") of ATS.



2. **Purchase Price**: As consideration for the sale these Assets, GFG would pay according to the following schedule:

   a. **Secured creditors at 100% of outstanding principle balances plus unpaid accrued interest as of the date of close. The outstanding principle balances are believed to be similar to amounts listed below from the Debtor's First Amended Plan of Reorganization filed 06/08/09:**

   | | |
   |---|---|
   | Bank of the West | $5,583,964.21 |
   | Chase Auto Credit | $19,773.96 |
   | GMAC | $5,405.54 |
   | Union Bank | $24,377.97 |

   b. **Unsecured Trade Creditors at 100% of outstanding balances as listed on Debtor's First Amended Plan of Reorganization filed 06/08/09, less Insider Debt as follows:**

   | | |
   |---|---|
   | Unsecured Trade Creditors | $142,483.13 |

   c. **Bank of the West's legal fees in accordance with the terms of Debtor's original contract language with BOW, subject to review and reasonableness of said fees.**

   d. **Liabilities, Executory Contracts & Unexpired Leases Assumed**: No liabilities, executory contracts or unexpired leases will be assumed by the GFG in this transaction except as may otherwise be mutually acceptable to the parties.

3. **Closing**: GFG currently expects that the consummation of the transactions contemplated hereby (the "Closing") would occur not later than 30 days after execution of final agreements.

4. **Conditions to Closing**: In addition to other conditions to closing which are customary for a transaction of this nature, the Closing would also be conditioned upon the following:

   a. Prior to the execution of the Asset Agreement, GFG shall have completed its due diligence investigation of ATS and its prospects and shall be satisfied in its sole discretion with the results thereof;

   b. Prior to the execution of the Asset Agreement, the board of directors of GFG shall have approved the Asset Agreement and any other material terms of the transaction contemplated thereby;

Jeff Mumm, July 21, 2009, Page 2

5.  **Funding:**   Existing lending sources have indicated they are prepared to lend funds to partially finance the transaction at a rate of 50% - 85% of the FMV of the acquired assets with the remainder of the funding coming from internal equity sources.

6.  **Expenses:**  Each party would pay for its own legal, accounting, and any and all other costs and expenses, incurred with respect to the transactions contemplated hereby and the negotiation and execution of the Asset Agreement.

This letter is and shall remain only a proposal and is intended solely to facilitate negotiations and preparation of a definitive asset purchase agreement and other contract agreements that will embody all final terms and conditions agreed upon by the parties and is not binding upon any party hereto; any party may discontinue negotiations at any time by giving written notice to that effect to the other and, in such event, neither party will have any liability to the other for discontinuing negotiations, provided, however, that notwithstanding the forgoing the provisions in Section 6 hereof shall be binding in any event if the transaction is not consummated.

This letter may be executed in counterparts (including by facsimile), all of which, when taken together, shall constitute one original.

General Finance Group, Inc.

By: _____
    Marc Perez
    President

Cc: R. Valenta
    B. Mann
    M. Fielding